Opinion issued April 21, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00102-CV

———————————

WHITE LION HOLDINGS, L.L.C., Appellant

V.

SHARON TUBE CORPORATION
D/B/A SHARON TUBE CO., Appellee



 



 

On Appeal from the 268th District Court

Fort Bend County, Texas



Trial Court Case No. 05-CV-146366

 



 

MEMORANDUM OPINION

Appellant,
White Lion Holdings, L.L.C. (“White Lion”), filed a motion for rehearing and
for en banc reconsideration of our December 23, 2010 opinion.   We deny White Lion’s motion for rehearing,
withdraw our opinion and judgment of December 23, 2010, and substitute this
opinion and judgment in their place.  Because
we issue a new opinion in connection with the denial of rehearing, White Lion’s
motion for en banc reconsideration of our December 23, 2010 opinion is rendered
moot.  See Richardson-Eagle, Inc. v.
William M. Mercer, Inc., 213 S.W.3d 469, 472 (Tex. App.—Houston [1st Dist.]
2006, pet. denied).

Appellant, White Lion
Holdings, L.L.C. (“White Lion”), challenges the trial court’s take-nothing judgment
entered, after a jury trial, in favor of appellee, Sharon Tube Corporation
doing business as Sharon Tube Co. (“Sharon Tube”), in White Lion’s suit against
Sharon Tube for breach of an auction sale contract that they had independently
entered with an auctioneer, Daley-Hodkin Corporation (“Daley-Hodkin”).  In three issues, White Lion contends that the
trial court erred in denying its motion for partial judgment notwithstanding
the verdict and to disregard the jury’s finding that White Lion and Sharon Tube
had not made an agreement between them by agreeing to the “terms of the auction
sale”; submitting to the jury the question of whether White Lion and Sharon
Tube had made an agreement between them without including a reference to a bankruptcy
court’s “Order Approving Sale” as part of the alleged contract; and not submitting
to the jury a question asking whether White Lion was a third-party beneficiary
of the “Terms of the Sale.”       

We
affirm.   

Factual
and Procedural Background

          The critical
facts are largely undisputed.  In
February 2004, at a bankruptcy sale of the assets of Vision Metals, Inc.
(“VMI”), Bernard Morello purchased real property, which included several buildings
owned by VMI.  Shortly thereafter, Morello
conveyed the real property and buildings to White Lion, an entity of which he
was a principal.  Sharon Tube, at the
same bankruptcy sale, purchased some of VMI’s equipment located in the
buildings, and it contracted with Dixie Cullen Interests (“DCI”) to remove the
equipment. 

          At trial, White
Lion presented evidence that, in the course of removing the equipment, DCI
damaged its buildings and property. 
Sharon Tube, in its pleadings and at trial, contended that it did not
have a contract with White Lion and White Lion was barred from pursuing any
breach of contract claims against it. 
Sharon Tube presented evidence disputing White Lion’s claim that it had
damaged White Lion’s buildings in the manner complained of by White Lion.

          In support of
its breach of contract claim, White Lion asserted that all buyers of equipment
at the bankruptcy sale, including Sharon Tube, had agreed that the removal of any
equipment would be completed in accordance “with the terms stated” by the auctioneer,
Daley-Hodkin, including the Terms of Sale, which Daley-Hodkin had furnished to
each buyer and posted at the time of the sale. 
In its petition and at trial, White Lion highlighted the provisions of
the Terms of Sale that provided that a buyer’s removal of any personal property
had to be completed in accordance with the terms set forth by Daley-Hodkin, at
the buyer’s own risk and expense, and in compliance with all applicable laws;
the buyer was to disconnect and cap electrical and water lines in a
professional and reasonable manner and “failure to do so” would result in the buyer
being held responsible for any costs or damages incurred; and modification of
any portion of the Terms of Sale or additional terms and conditions of sale
could be made by Daley-Hodkin at any time. 

          White Lion
asserted that, under the bankruptcy court’s subsequent “Order Approving Sale,” which
was signed on March 31, 2004, all buyers were vested with the right, title, and
interest previously held by VMI and that the “Transaction Documents” and the
Order Approving Sale bound and inured to the benefit of all debtors, buyers,
their respective affiliates, successors, and assigns, and any affected third
parties.  Relying upon the Terms of Sale
and Order Approving Sale, White Lion argued that “it was in privity with VMI”
as a good faith purchaser of the property and buildings, the bankruptcy sale
vested it with all right, title, and interest held by VMI at the time of the
sale, and it was “a third-party beneficiary of the Terms of Sale” between
Sharon Tube, VMI, and Daley-Hodkin. 
White Lion asserted that Sharon Tube had breached the Terms of Sale in a
number of ways, including damaging walls, doors, and “door closers” in multiple
locations, failing to disconnect and cap electrical wires and electrical, air,
gas, and water lines in a professional and reasonable manner and in compliance
with all laws, and failing to require DCI to remove the property in accordance
with the Terms of Sale.  White Lion
sought damages for repair costs, and it presented testimony on the amount of
damage allegedly caused by Sharon Tube.

           After both sides had rested and closed, the
trial court asked the jury, in question number one, “Did Bernard Morello/[White
Lion] and [Sharon Tube] agree to the Terms of Sale?”  The jury answered, “Yes.”[1]  The trial court then asked the jury in
question number two whether “[b]y agreeing to the Terms of Sale do you find
that there was an agreement made by and
between Bernard Morello/[White Lion] and [Sharon Tube].” (Emphasis added.)  During deliberations, the jury submitted a
question to the trial court asking if it “were to answer ‘no’ to question
number two,” would it still “need to answer question number four,” which was
the damages question.  In response to the
question, the trial court instructed the jury to “read the instructions,” which
provided that the jury could only reach the following question it if answered “yes”
to question number two. The jury then answered question number two, “no,”
finding that there was no agreement “between Morello/White Lion and Sharon
Tube.”  Accordingly, the jury did not
reach questions number three and four, which asked the jury whether Sharon Tube
had “fail[ed] to comply with the Terms of Sale” and, if so, the proper amount
of damages that the failure caused Morello/White Lion.[2]
 In accord with the jury’s findings, the
trial court entered a take-nothing judgment in favor of Sharon Tube.

Judgment
Notwithstanding the Verdict

In
its first issue, White Lion argues that the trial court erred in denying its
motion for partial judgment notwithstanding the verdict and to disregard the
jury’s negative answer to question number two because, “as a matter of law,”
the Terms of Sale and Order Approving Sale created “a binding obligation for
Sharon Tube to be responsible to White Lion for damages” caused by the removal
of Sharon Tube’s equipment, White Lion was in “privity” with VMI and the bankruptcy
sale vested White Lion with “all right, title and interest of [VMI],” and
“White Lion was a third-party beneficiary of the Terms of Sale.”  In response, Sharon Tube argues that it is
not responsible for White Lion’s damages because it, as a matter of law, did
not contract with White Lion or Morello for either the sale or removal of the assets
purchased at the bankruptcy sale, all contracts for the sale and removal of
assets were between Daley-Hodkin and the individual buyers, the consideration
for the purchase and removal of assets was exchanged between Daley-Hodkin and
the individual buyers, and the Order Approving Sale, at most, constituted a
“condition precedent” to start the date for the buyers to remove their assets.  Sharon Tube also asserts that there is no
evidence that the parties intended to make White Lion a third-party beneficiary
and White Lion is not a third-party beneficiary as “a matter of law.” 

A judgment notwithstanding the
verdict is proper when a directed verdict would have been proper.  Tex. R.
Civ. P. 301; Fort Bend County Drainage Dist. v. Sbrusch, 818
S.W.2d 392, 394 (Tex. 1991).  A party
challenging the legal sufficiency of an adverse finding on which that party had
the burden of proof at trial must demonstrate that the evidence conclusively
established, as a matter of law, all vital facts in support of the issue.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001); Wagner v. Edlund, 229 S.W.3d 870, 874 (Tex. App.—Dallas 2007, pet. denied). In
reviewing a matter of law challenge, we first examine the record for evidence
that supports the adverse finding and ignore contrary evidence.  Dow
Chem., 46 S.W.3d at 241 (citing Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989)).  We indulge every reasonable inference to
support the finding, crediting favorable evidence if a reasonable jury could
and disregarding contrary evidence unless a reasonable jury could not.  City of
Keller v. Wilson, 168 S.W.3d 802, 807, 822 (Tex. 2005).  If there is no evidence to support the
adverse finding, we then review the entire record to determine if the contrary
proposition is established as a matter of law. 
Dow Chem., 46 S.W.3d at 241
(citing Sterner, 767 S.W.2d at 690).
The test for legal sufficiency is the same for directed verdicts, judgments
notwithstanding the verdict, and no-evidence review.  City of
Keller, 168 S.W.3d at 823. 

White
Lion first asserts that it formed a direct contractual relationship with Sharon
Tube through the Terms of Sale and the subsequent Order Approving Sale and, as
a result, Sharon Tube had a contractual responsibility to compensate White Lion
for damages it caused in removing the equipment from White Lion’s buildings and
property.  Based upon this assertion,
White Lion argues that the jury was required to find that, by agreeing to the Terms of Sale,
an agreement was made “by and between Bernard Morello/[White Lion]
and [Sharon Tube].”  (Emphasis
added).[3] 


          In support of
its claim that it had a direct contractual relationship with Sharon Tube, White
Lion emphasizes the following language in the Terms of Sale:

. . . The purchaser of the
Real Property will be required, if necessary, to provide the Auctioneer with
unrestricted use and occupancy of the Real Property through June 30, 2004 or
completion of delivery of the Personal Property, whichever is later.

 

. . . . 

 

Removal of the Personal
Property must be completed in accordance with the terms stated by the
Auctioneer.  All of the Personal Property
is required to be removed by the purchaser at its own risk and expense and in
compliance with all applicable laws, regulations or ordinances including State
and Federal Environmental laws. . . . Removal of Personal Property will begin
immediately following approval of the sale by the US Bankruptcy Court. . . . 

 

. . . .

  

All
purchasers and their agents involved in the removal of the Personal Property
may, at the Auctioneer’s discretion, be required to provide a Certificate of
Insurance naming Daley-Hodkin Corporation and [VMI] as loss payee . . . All
purchasers are required to disconnect and cap electrical and water lines in a
professional and reasonable manner. 
Failure to do so will result in the purchaser being held responsible for
any costs or damages incurred.

 

.
. . . 

 

.
. . All bids are subject to the approval of the US Bankruptcy Court District of
Delaware.

 

.
. . . Modification or waiver of any portion of these Terms of Sale or
additional terms and conditions of sale may be made by Auctioneer at any time
and said modification shall not affect any other portion of the Terms of
Sale.  A successful bid is considered acceptance
of the above terms and is a binding contract.

 

          White Lion also relies upon several
provisions in the bankruptcy court’s Order Approving Sale, including those that
state that the buyers of the personal and real property were “good faith purchasers”
and the terms and provisions of the “Transaction Documents” and Order Approving
Sale were binding upon and inured to the benefit of the debtors and their
creditors, the buyers, their respective successors and assigns, and any
affected third parties, including all persons asserting an interest in the
assets sold to the buyers.  White Lion
emphasizes that the bankruptcy court, in its Order Approving Sale, ordered all
buyers to “cooperate and take steps reasonably necessary with Seller and
Seller’s agents to implement and facilitate the removal of personal property”
located at the buildings and property purchased by White Lion and that, “in
connection with the foregoing,” all buyers were ordered to provide “to Seller’s
agent, Daley-Hodkin, prior to taking possession” of the assets, certificates of
insurance “evidencing the following as loss payees: Debtors, Daley-Hodkin and Bernard J. Morello.” [4]
(Emphasis added.)  

          In addition to the Terms of Sale and Order Approving Sale,
the record also contains a copy of the February 27, 2004 Real Estate Purchase
Agreement “by and between” VMI and Morello and the amendment to the Real Estate
Purchase Agreement between VMI and Morello. 
In the Real Estate Purchase Agreement, which was executed only by
Morello and VMI, Morello agreed to, after closing, “reasonably cooperate and
assist [VMI] and its creditors in
[VMI’s] liquidation of any assets which remain upon [Morello’s] premises.”  (Emphasis added.)  Morello further agreed to provide VMI and its creditors “with reasonable
access to [Morello’s] facilities during normal business hours to effectively
remove and liquidate any such assets, at no cost to [VMI].”  In return, VMI agreed to “provide a member of
its staff to oversee any such removal,” the removal would be completed by June
30, 2004 unless mutually extended, and VMI would reimburse Morello for
utilities for the property until removal was completed.  The Real Estate Purchase Agreement and the
amendment thereto contained no reference to other buyers of personal property
from VMI.  Moreover, although the Real
Estate Purchase Agreement required cooperation between Morello and VMI in the
course of liquidation and removal of personal property from the real property,
it contained a provision specifically entitled “No Third Party Beneficiaries,”
which stated that terms of the Real Estate Purchase Agreement are “intended
solely for the benefit of the parties” and successors and that the parties did
not intend to confer third-party beneficiary rights upon any other person.

          The
elements of a valid contract are “(1) an offer, (2) an acceptance, (3) a meeting
of the minds, (4) each party’s consent to the terms, and (5) execution and
delivery of the contract with the intent that it be mutual and binding.”  DeClaire
v. G & B McIntosh Family Ltd. P’Ship, 260 S.W.3d 34, 44 (Tex. App.—Houston
[1st Dist.] 2008, no pet.).  A contract
must be based upon a valid consideration—in other words, mutuality of
obligation.  Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 408 (Tex. 1997).  “Consideration is a bargained for exchange of
promises” and “consists of benefits and detriments to the contracting parties.”  Id.
at 408–09.  A contract that lacks consideration
is unenforceable. [5]  Id.
at 409.

          The evidence presented at trial
conclusively established that Daley-Hodkin, as the designated auctioneer for
the bankruptcy sale of VMI’s assets, made the offers to sell the personal and
real property of VMI to the potential buyers bidding at the bankruptcy sale.  Daley-Hodkin required all bidders to register
and all successful bidders, along with the second-highest bidders for certain
assets, to make a deposit by cash, check, or certified funds “made payable to
Daley-Hodkin.”   Certain bidders, including bidders for real
property, were required to deliver an acceptable “Purchase Agreement,” or
Daley-Hodkin could offer the assets for rebid. 
White Lion and Sharon Tube made their respective bids to purchase the assets
of VMI in accordance with the Terms of Sale directly to Daley-Hodkin.  It is undisputed that White Lion and Sharon
Tube did not have any dealings or negotiations with each other in the course of
bidding and their purchase of the assets. 
Moreover, it is undisputed that the parties made their respective payments
for their purchases to Daley-Hodkin, not to each other.  There is no evidence that, prior to these purchases
being made, White Lion or Sharon Tube had any dealings with the other.  

          Although the Terms of Sale contained
contractual obligations pertaining to the removal of personal property from the
properties that were purchased by Morello and ultimately conveyed to White
Lion, there is nothing in the Terms of Sale, or in the other evidence presented
at trial, that would support an affirmative finding to question number two that
“by agreeing to the Terms of Sale” there was an agreement made “by and between Bernard
Morello/White Lion and Sharon Tube.”  In sum, Daley-Hodkin, as the Auctioneer for
VMI, made the offers to the individual buyers to purchase VMI’s assets; the
individual buyers accepted the offers made by Daley-Hodkin by dealing directly
with Daley-Hodkin and tendering consideration to Daley-Hodkin; and the required
“meeting of the minds” occurred between Daley-Hodkin and the individual buyers.

          Even assuming
that, because the Terms of Sale provided Daley-Hodkin with the authority to
modify its agreement with the buyers, the bankruptcy court’s Order Approving
Sale could have served to modify the Terms of Sale in some respect, the Order
Approving Sale could not have resulted in the creation of an agreement between Morello/White Lion and Sharon Tube.  This is because, as explained above, such an
agreement between these parties never previously existed.  Again, the Terms of Sale evidenced an
agreement only between the individual buyers and Daley-Hodkin, as Auctioneer
for VMI; nothing in the Terms of Sale evidenced an agreement between or among the
buyers themselves.  For example, there
were multiple buyers of VMI’s personal property, none of whom had direct
contractual relationships with each other. 
If one of the buyers of some of VMI’s personal property had damaged
another piece of personal property purchased by another buyer, there is nothing
in the record before us to indicate that those buyers could be held
contractually responsible to each other for any damages incurred. Although
Sharon Tube, like the multiple other buyers of VMI’s assets, was identified in
an attachment to the Order Approving Sale, it was not a party to the bankruptcy
proceedings, and its mere identification in the Order Approving Sale as a buyer
does not constitute any evidence that “by agreeing to the
Terms of Sale” there was of
an offer, acceptance, and meeting of the minds by and between White Lion and
Sharon Tube.

          This, of
course, is not to say that Sharon Tube did not agree to be bound by the Terms
of Sale, including the provisions regarding the removal of property.  Even Sharon Tube agrees that it was bound by
these terms, although it disputes to whom it was contractually bound and that
it breached the Terms of Sale in the manner and scope alleged.   There is no evidence that Sharon Tube
reached an agreement to be contractually bound directly to White Lion through
the Terms of Sale, which is what the jury was asked to find in question number
two.  The provisions of the
Order Approving Sale emphasized by White Lion simply stated that White Lion and
the other buyers were good faith purchasers and that the terms and provisions
of the Transaction Documents, including the Terms of Sale and the Order
Approving Sale itself, were binding upon and inured to the benefit of the
debtors and buyers.  Although the bankruptcy
court imposed certain additional orders through the Order Approving Sale,[6] it
did not create a direct contractual relationship between White Lion and Sharon
Tube.   

          In the alternative, White Lion argues that
because it was in privity with VMI as a good faith purchaser, it was vested
with all right, title and interest of VMI in the buildings and property that it
purchased.  White Lion seems to suggest
that it was an assignee of any damage claims previously held by VMI.  However, the evidence presented at trial was
that Sharon Tube caused the alleged damage to the buildings after Morello’s closing
and at the time when either Morello or White Lion owned the real property and
buildings.  White Lion’s “privity”
argument does not provide this Court with a basis to hold that the trial court
erred in not disregarding the jury’s negative answer to question number two.[7]

          Finally, White Lion argues that the
trial court should have disregarded the jury’s negative answer to question
number two because White Lion was “a third-party beneficiary of the Terms of
Sale” between Sharon Tube and VMI and Daley-Hodkin.  However, to the extent that there is any
evidence that White Lion was a third-party beneficiary of the contract between
these parties, which we address below, such evidence would not have provided a
basis for the trial court to disregard the jury’s negative answer to question
number two.  Again, question number two
asked the jury whether there was an agreement made between White Lion and Sharon
Tube through the Terms of Sale. 
There is simply no evidence of such an agreement and, in fact, the
evidence cited by the parties conclusively established that there was no direct
contractual relationship formed between White Lion and Sharon Tube as a result
of agreeing to the Terms of Sale.[8]   Accordingly, we hold that the trial court did
not err in not disregarding the jury’s answer to question number two and in denying
White Lion’s motion for partial judgment notwithstanding the verdict.    

          We overrule White Lion’s first issue.

Instruction on Order Approving Sale

          In its second issue, White Lion argues
that the trial court erred in submitting question number two to the jury because
it improperly omitted reference to the “Order Approving Sale” as part of the
contract.   White Lion asserts that
question number two should have read, “By agreeing to the Terms of Sale and the Bankruptcy Court Order do you
find that there was an agreement made by and between Bernard Morello/White Lion
Holdings, L.L.C. and Sharon Tube Corporation?”[9]
(Emphasis added.)  White Lion asserts
that “any time multiple documents are alleged to constitute a contract, the
jury question must name all the documents.” 
White Lion further argues that because it gave Daley-Hodkin and the
buyers, including Sharon Tube, access and entry to its property pursuant to the
Terms of Sale and Order Approving Sale, consideration flowed between White Lion
and Sharon Tube in that it gave Sharon Tube and its contactor, DCI, under these
documents, “access to the property based on their promise to assume the risk of
the damages and to disconnect and cap water and electrical lines in a professional
and reasonable manner.”

          Accordingly, because there is no
evidence that a contractual relationship existed between White Lion and Sharon
Tube as reflected in the Terms of Sale and bankruptcy court’s Order Approving
Sale, we hold that the trial court did not err in not referencing the Order
Approving Sale in question number two.  

          We overrule White Lion’s second issue.

Question on Third-Party Beneficiary Status

          In its third issue, White Lion argues
that the trial court erred in not submitting to the jury a question asking
whether White Lion was a third-party beneficiary of the Terms of the Sale
because White Lion and Morello “were required to be named as loss payees” in
the buyers’ insurance policies and this condition was imposed “prior to removal
and was expressly required” in the Order Approving Sale.” [10]  White Lion notes that the Order Approving
Sale provides that “Terms of Sale inured to the benefit of all Buyers” and that
“[c]ertain provisions in the Terms of Sale were clearly for the benefit of the
property owner.”

          “Texas law recognizes that third
parties have standing to recover under a contract that is clearly intended for
their direct benefit.”  City of Houston v. Williams, No. 09-0770,
2011 WL 923980, at *14 (Tex. Mar. 18, 2011) (citing Stine v. Stewart, 80 S.W.3d 586, 589 (Tex. 2002) (per
curiam)).  In determining whether a third
party can enforce a contract, the intention of the contracting parties is
controlling.  Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc., No. 08–0244, 2011
WL 1206376, at *3 (Tex. Apr. 1, 2011).  Although
a contract need not have been executed solely to benefit a noncontracting party,
we will “not create a third-party benefit by implication.”  Williams,
2011 WL 923980, at *14; MCI Telecomms.
Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 651–52 (Tex. 1999).  The presumption is that parties contract only
for themselves, absent a clear showing of intent otherwise.  S. Tex.
Water Auth. v. Lomas, 223 S.W.3d 304, 306 (Tex. 2007); MCI Telecomms. Corp., 995 S.W.2d at 651.  An intent to confer a direct benefit upon a
third party must be clearly and fully spelled out or enforcement by the third
party must be denied.  Basic Capital Mgmt., Inc., 2011 WL
1206376, at *3; S. Tex. Water Auth.,
223 S.W.3d at 306 (citing MCI Telecomms.
Corp., 995 S.W.2d at 651).  

          White Lion and Sharon Tube, like the
other buyers at the bankruptcy sale, entered into a contract with Daley-Hodkin,
the auctioneer of VMI’s assets, to purchase certain assets.  There is no evidence of any dealings or
negotiations between Sharon Tube and White Lion or Morello prior to the
purchase.  There is nothing in the Terms
of Sale stating that any buyers of the assets would be considered the third-party
beneficiaries of other buyers.  We
recognize that the Terms of Sale required buyers to remove their purchased
personal property at their own risk and expense and in compliance with all
applicable laws.  However, contrary to
White Lion’s assertion, this specific term did not “clearly and fully spell[]
out” the rights of other third-party buyers to bring suit for breach of any
specific enforceable commitments. 
Moreover, the Terms of Sale also reflect that Daley-Hodkin, the
auctioneer, was charged with conducting and overseeing the removal
process.  The Terms of Sale expressly
provided that “[r]emoval of the Personal Property must be completed in
accordance with the terms stated by the Auctioneer.”  The Terms of Sale imposed specific deadlines
set by Daley-Hodkin for removing purchased personal property and provided
Daley-Hodkin with the discretion to extend the deadlines set forth.  The Terms of Sale provided Daley-Hodkin with
the discretion to require the buyers and their agents who were involved in the
removal process to provide certificates of insurance naming Daley-Hodkin and
VMI as loss payees.  Nothing in the Terms
of Sale contemplated any other loss payees. 
Finally, the Terms of Sale provided the auctioneer with the discretion
to modify or waive the contractual terms. 
Although the Terms of Sale did provide that buyers would be “held
responsible for any costs or damage incurred” in the event that they failed to
“disconnect and cap electrical and water lines in a professional and reasonable
manner,” nothing in this provision indicated
that White Lion, the eventual buyer of the real property, would be entitled to
hold these other buyers contractually
liable for damages caused during the removal process.   

          We further note that the Terms of Sale
obligated Morello and White Lion, as the eventual purchaser of the real
property, to provide Daley-Hodkin with “unrestricted use and occupancy” of the
real property throughout the designated removal period.  While such an obligation would have a benefit
to the buyers of the personal property, this promise, made by Morello to
Daley-Hodkin, assured Daley-Hodkin and VMI’s creditors access to the property
in order to effectively liquidate VMI’s assets. 
The Real Estate Purchase Agreement executed by VMI and White Lion provided
consistent obligations that required White Lion, after closing, to “reasonably
cooperate and assist” VMI and VMI’s creditors in the liquidation of any assets
remaining on the property, and VMI, in return, agreed to “provide a member of
its staff to oversee any such removal” and to reimburse Morello for utilities
for the removal period.  Yet, the Real
Estate Purchase Agreement also expressly stated that VMI and White Lion did not
intend to confer third-party beneficiary rights upon any other person, including,
necessarily, Sharon Tube and all the other buyers of VMI’s assets.  These documents establish that, despite the
benefit of access, the parties did not intend to confer third-party beneficiary
status on the personal property buyers. 
The “Transaction Documents” conclusively establish that such buyers
would not be able to sue White Lion for recovery under a third-party
beneficiary claim.  Similarly, the
documents before us do not reveal that Daley-Hodkin and Sharon Tube possessed
an intent “to confer a direct benefit” upon Morello and White Lion.  Because Morello and White Lion’s third-party
beneficiary status was not “clearly and fully spelled out,” White Lion may not
sue for enforcement of the contract as a third-party beneficiary.  See
S. Tex. Water Auth., 223 S.W.3d at
306.

          Finally, we address White Lion’s
argument that its status as a third-party beneficiary is evidenced by the fact
that the bankruptcy court’s Order Approving Sale required buyers to provide
Daley-Hodkin, prior to taking possession of the purchased assets, certificates
of insurance naming Morello, in addition to VMI and Daley-Hodkin, as loss
payees.  First, we note that this
requirement was not in the Terms of Sale. 
Second, the testimony presented at trial reveals that Sharon Tube never
provided a certificate naming White Lion as a loss payee and was allowed to
remove the property under Daley-Hodkin’s direction.  Here, White Lion has not sued Daley-Hodkin
for its conduct in the removal process. 
There is also no indication in the record before us that White Lion has sought
to recover any potentially available insurance proceeds under policies naming
Daley-Hodkin or VMI as loss payees.  

          Accordingly, we hold that the trial
court did not err in not submitting to the jury a question asking whether White
Lion was a third-party beneficiary of the Terms of the Sale.

          We overrule White Lion’s third issue.

Conclusion

          We affirm the judgment of the trial
court.

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings and Bland.[11]

 











[1]           The
parties agreed in closing arguments that the answer to this question was “Yes.”





[2]
              The
parties presented conflicting evidence on whether Sharon Tube breached the
Terms of Sale and damaged White Lion’s property in the manner alleged, but based
upon the issues presented, an in-depth review of this evidence is not necessary
to the disposition of this appeal.





[3]           White
Lion did not seek recovery through a negligence claim.





[4]
              The
evidence at trial revealed that, despite this provision in the Order Approving
Sale, Sharon Tube never presented a certificate of insurance naming White Lion
or  Morello as a loss payee but was
allowed to remove the personal property that it purchased.

 





[5]           The
trial court, in the jury charge, included instructions on the elements of a
valid contract consistent with the above-quoted law.





[6]
              Most
relevant of these additional orders was the additional requirement for the
buyers to provide Daley-Hodkin with certificates of insurance naming Morello as
a loss payee.  As discussed above, it is
undisputed that Sharon Tube failed to provide a certificate of insurance naming
Morello as loss payee.

 





[7]
              Again,
in question number two, the jury was asked whether or not, “[b]y agreeing to
the Terms of Sale,” there “was an
agreement made by and between Bernard Morello/[White Lion] and [Sharon Tube].”
(Emphasis added.)  On rehearing, White
Lion more forcefully argues matters that do not directly address whether the
trial court erred in denying “White Lion’s motion for partial judgment
notwithstanding the verdict” and disregarding the jury’s answer to question
number two.  For example, White Lion
stresses that it “stepped into the shoes of VMI” and that Sharon Tube is
“liable as a matter of law.”  White Lion
also asserts that, despite the language of question two, its argument for
Sharon Tube’s liability “is not based on a contract between [White Lion] and
Sharon Tube.”   But this is precisely
what the jury was asked: whether, by agreeing to the Terms of Sale, White Lion
and Sharon Tube had formed a contractual relationship.  This is also the finding that White Lion
asked the trial court to disregard and that White Lion challenges in its first
issue in its appellant’s brief.   

 





[8]
              We address below White Lion’s
contention in its third issue that it was entitled to a separate question on
its status as a third-party beneficiary.





[9]           White Lion requested
inclusion of the emphasized portion.

 





[10]
            White
Lion presents this argument in the alternative to its argument in its first
issue that the
trial court should have disregarded the jury’s answer to question number two
for a number of reasons, including that it was “a third-party beneficiary of the
Terms of Sale.”  We have previously held
that even if evidence existed to support a finding that White Lion was a
third-party beneficiary, such evidence would not have provided a basis for the
trial court to disregard the jury’s answer to question number two.  The jury was not asked any question about
third-party beneficiary status, and the parties’ assertion that question number two was broad enough to include
whether White Lion was an intended third-party beneficiary ignores the plain
language of that question.





[11]
            Justice
Hanks resigned from the Court effective September 13, 2010 and is now a
magistrate judge for the United States District Court for the Southern District
of Texas, Houston Division.  This case
has been decided by the two remaining justices. 
Tex. R. App. P. 41.1(b).