

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

### NO. PD-1124-15

---

### JAMES EARL WILLIAMS, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE TENTH COURT OF APPEALS McLENNAN COUNTY

---

**KELLER, P.J., delivered the opinion of the Court in which MEYERS, KEASLER, HERVEY, ALCALA, RICHARDSON, YEARY and NEWELL, JJ, joined. JOHNSON, J. concurred.**

Pursuant to an agreement, appellant pled guilty to two felony offenses. In addition to the written terms of the plea agreement, the parties orally agreed to a statement made by defense counsel. This statement, occurring at the plea hearing after defense counsel acknowledged the written terms of the agreement "in each case," was: "And the State . . . is going to refuse prosecution of any other case in which the State has notice . . . unfiled cases." Appellant now contends that this oral part of the plea agreement was unambiguous and bars the prosecution of an unrelated murder case because

the State had notice of it at the time of the plea. The State contends that this oral part of the agreement was ambiguous and that affidavits from the attorneys involved in the plea show that the plea agreement was not intended to encompass the murder case. We agree with the State and affirm the judgment of the court of appeals.

## I. BACKGROUND

### A. The Earlier Prosecutions

Offense reports by the Waco Police Department indicate that appellant committed several crimes on July 25, 1998. Appellant forcibly entered the home of Roy Mitchell and robbed him at gunpoint. He also shot Darrell Davis in the parking lot of a Church's Fried Chicken. A stray bullet allegedly struck a nine-year-old child nearby, who suffered a superficial wound.

Appellant was indicted for aggravated robbery for the incident involving Mitchell and for aggravated assault for the incident involving Davis. In 2002, appellant pled guilty to these offenses pursuant to an agreement. In each case, a document entitled "Disclosure of Plea Recommendation" stated that appellant was pleading guilty to the respective offense in exchange for a fifteen-year sentence. These documents were signed by the prosecutor, appellant, and defense counsel. At the plea hearing, the plea agreement was discussed as follows:

> THE COURT: And has there been a plea bargain entered into between the State and the defense?
>
> [PROSECUTOR]: Yes, Your Honor. The State's agreed to recommend 15 years confinement in the penitentiary.
>
> THE COURT: Is that your understanding of the plea bargain, [defense counsel]?
>
> [DEFENSE COUNSEL]: Yes, sir, in each case. And the State, um, is going to refuse prosecution of any other case in which the State has notice, um –

[PROSECUTOR]: That's correct.

[DEFENSE COUNSEL]: – unfiled cases.

[PROSECUTOR]: That's correct.

The trial court would later ask, "And do you understand what the recommendation is in each of these cases?" Appellant responded, "Yes." The trial court followed the plea agreement and sentenced appellant to fifteen years in prison on each case.

### B. The Present Case

In 2012, appellant was indicted for the murder of Darren Lang. The murder was alleged to have occurred on June 12, 1998.

At trial, appellant moved to dismiss the murder prosecution on the basis of his plea agreement in the prior cases. He contended that the murder case was an "unfiled case in which the State has notice" in accordance with defense counsel's statement of the oral portion of the prior plea agreement. In support of his claim, appellant submitted an affidavit from himself that "it was [his] understanding that all cases pending against [him] in the McLennan County District Attorney's office, both filed and unfiled, were taken into consideration" in his prior plea "and that the State would refuse prosecution in any other cases in which the State has notice." "Obviously," appellant further stated, "I understood this would include the unfiled murder case." And appellant said that he "would never have pled guilty" to the prior cases unless he "knew that those pleas would clean up all cases against [him] in Waco."

Appellant also submitted two letters purportedly sent to him in 2001 by defense counsel in the prior cases. Both letters stated that defense counsel planned to meet with the prosecutor about "an unfiled murder case."

The State submitted affidavits from the prosecutor and the defense attorney in the prior cases.[1] Both attorneys stated that the murder case was not part of the plea agreement.[2] The State took the position that the intent of the parties and the written documents control over what was said in open court. When asked by the trial court what the State's position would be if "what's said in open court counts," the State replied that the term "notice" was unclear and ambiguous.[3]

The trial court denied appellant's motion to dismiss. In accordance with jury verdicts at the guilt and punishment phases of trial, appellant was convicted of murder and sentenced to eighty-five years in prison.

### C. Appeal

On appeal, appellant contended that the trial court erred in denying his motion to dismiss. The court of appeals agreed with the State "that, at the very least, the phrase 'any other case in which

---

[1] At the time of the murder trial, the defense attorney from the prior cases worked in the district attorney's office.

[2] The prosecutor stated, "During plea negotiations we had specifically agreed that the potential Murder charge from 1998 would not be taken into consideration in any form whatsoever with these pleas." Defense counsel stated, "The plea agreements in these cases did not in any way include consideration of an unindicted murder charge against Mr. Williams. I never represented to Mr. Williams that the unindicted murder charge was in any way included in the plea bargain agreements."

[3] The State contended, "I don't know what they meant by 'notice.' I mean, that's why you have to ask the parties who entered into the agreement. Cases that we have notice of, does it mean notice that somebody has been arrested? Does it mean that, you know, we've taken it to a grand jury but they haven't made any recommendation for what we do with that case? I mean, what – we don't know what they meant by 'notice' because they never explained and that's why we had to go back and get, you know, written statements from both parties about what they meant when they made this plea agreement.

the State has notice . . . unfiled cases' is ambiguous."[4]  The court further concluded that the trial

court did not err in denying the motion to dismiss because (1) the plea documents in the prior cases

did not refer to the murder charge, (2) the prosecutor and defense attorney in the prior cases both

stated that the murder case was not included in the plea agreement, and (3) the record reflects other

unfiled cases that the State had notice of that relate to the aggravated robbery and aggravated assault

charges (trespass for entering Mitchell's home and injury to a child for the stray bullet that injured

a nine-year-old).[5]  Consequently, the court of appeals affirmed appellant's conviction.[6]

Chief Justice Gray dissented.[7]  He would have determined that there was no ambiguity in the

plea agreement and that the murder case was an unfiled case about which the State had notice.[8]

## II. ANALYSIS

A plea agreement is a contract between the State and the defendant.[9]  We look to the written

agreement and the formal record to determine the terms of a plea agreement, and we apply general

contract-law principles to interpret a plea agreement.[10]  The interpretation of a contract begins with

the text and requires that undefined words be given their plain, ordinary, and generally accepted

---

[4]  *Williams v. State*, No. 10-13-00413-CR, 2015 Tex. App. LEXIS 7929, *5 (Tex. App.–Waco July 30, 2015) (not designated for publication).

[5]  *Id.* at *5-6 & n.1.

[6]  *Id.* at *6.

[7]  *Id.* at *6-7 (Gray, C.J., dissenting).

[8]  *Id.* at *7.

[9]  *Ex parte De Leon*, 400 S.W.3d 83, 89 (Tex. Crim. App. 2013).

[10]  *Jones v. State*, 488 S.W.3d 801, 805 (Tex. Crim. App. 2016); *De Leon*, 400 S.W.3d at 89.

meanings absent some indication of a different intent.[11]  Extrinsic evidence may be considered only to interpret an ambiguous contract, not to create an ambiguity not apparent from the contract's text.[12]  A contract is ambiguous only if it is subject to more than one reasonable interpretation,[13] and ambiguity cannot be created merely because a party can point to words or phrases that, read in isolation, would favor multiple interpretations, nor is ambiguity created merely because some language, when viewed through the lens of hindsight, could have been more clearly stated.[14]  Where an ambiguity exists in a contract, the contract language will be construed against the party who drafted it, "since the drafter is responsible for the language used."[15]

It is apparent that the oral part of the plea agreement cannot be interpreted literally.  Defense counsel's reference to the "State" is not explicitly limited to the district attorney of McLennan County—defense counsel simply said that the "State" would refuse prosecution of cases in which the "State" has notice.  A plea agreement could include an agreement that a case in another county would not be prosecuted,[16] but clearly the defense attorney was not intending his reference to the State to include prosecuting authorities in other counties, and even appellant claims to understand the reference to "State" to be limited to the district attorney's office in McLennan County.

Likewise, defense counsel's statement "any other case" is not explicitly limited to *appellant's*

---

[11]  *U.S. Metals v. Liberty Mutual Group*, 490 S.W.3d 20, 23 (Tex. 2015).

[12]  *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015).

[13]  *U.S. Metals*, 490 S.W.3d at 24.

[14]  *RSUI Indemnity Co. v. The Lynd Co.*, 466 S.W.3d 113, 130 (Tex. 2015).

[15]  *Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 735, 737 (Tex. 1990).

[16]  *See Story v. State*, 114 Tex. Crim. 668, 669, 27 S.W.2d 204 (1930).

cases. Defense counsel could have, but did not, say "any other case involving the defendant." But, although a plea agreement could include an agreement not to prosecute a different individual,[17] it is obvious that the generic reference to "any other case" was not intended to embrace cases against individuals other than appellant.

Defense counsel's references to the "State" and to "any other case" appear to be imprecise language that, in context, was merely shorthand for the "McLennan County District Attorney's Office" and "any other case involving the defendant." But there is another way in which the phrase "any other case" may be shorthand. It may be a reference to other cases that arise from the same facts as the cases that were pled. That is, the current cases involve certain offenses—an aggravated robbery and an aggravated assault. But future cases could involve other offenses that arose from the same transactions, unless the parties agree that the State will not prosecute such cases.

Moreover, the reference to "any other cases" could have meant any cases involving offenses that occurred at about the same time. The two cases that were pled have in common that the offenses occurred on the same day. That is, the aggravated robbery and aggravated assault belonged to a set of cases (those occurring on the same day) and the reference to "other cases" could have meant other cases in that set.

We think that the court of appeals was correct to consider the fact that the refusal-of-unfiled-cases term was not contained in the written plea documents but was only the subject of an oral statement at the plea proceedings. Oral statements implicate the maxim that "everyday language is often imprecise."[18] There is no indication in the record of the plea proceeding that defense counsel

---

[17] *See De Leon*, 400 S.W.3d at 85-86.

[18] *See Quinn v. State*, 958 S.W.2d 395, 402 (Tex. Crim. App. 1997).

sought to carefully parse an oral term of the plea agreement; to the contrary, defense counsel's phrasing is undeniably imprecise in at least two respects.

We do not hold that the above circumstances conclusively establish that the refusal-of-unfiled-cases term was case-specific (limited to offenses that arose from the same facts as the offenses to which appellant pled). We do, however, find the circumstances sufficient to establish ambiguity.

And once we conclude that the oral term of the plea agreement was ambiguous, we must inexorably conclude that the more limited construction of the term is appropriate. The defense counsel in the prior cases, who was appellant's agent, was the one responsible for the language used, and so the language must be construed against appellant. But even if that rule of construction did not work against appellant, defense counsel for those cases unequivocally stated that the murder case was not included in the plea agreement—thereby indicating that he did not intend the broad meaning to his words to which appellant now ascribes. The prosecutor likewise stated that the murder case was not included in the agreement. And there were offenses arising from the facts of the offenses pled that could have been later prosecuted absent the oral term of the plea agreement. By breaking into Mitchell's house with the intent to commit a felony, appellant committed a burglary offense that could have been prosecuted later, but for the refusal-of-unfiled-cases term of the agreement.[19] Likewise, the injury to the nine-year-old could also have been prosecuted at a later time, absent the

---

[19] *See Langs v. State*, 183 S.W.3d 680, 686 (Tex. Crim. App. 2006) ("[I]t is equally well settled that a substantive felony and a burglary by entering a home without the consent of the owner and with the intent to commit that felony are two distinct offenses.").

oral term of the plea agreement.[20]

Because we conclude that the oral term of the plea agreement was limited to unfiled cases that arose from the same facts as the cases to which appellant pled, the prosecution of the murder case, which was unrelated to those cases, was not barred by the oral term of the plea agreement.[21] We affirm the judgment of the court of appeals.

Delivered: September 14, 2016
Publish

---

[20] *See Ex parte Hawkins*, 6 S.W.3d 554, 557 (Tex. Crim. App. 1999) ("[I]n Texas the allowable unit of prosecution for an assaultive offense is each victim."). *See also* TEX. PENAL CODE § 22.04(a)(3) ("A person commits an offense if he . . . with criminal negligence, by act . . . causes to a child . . . bodily injury."); *Ex parte Norris*, 390 S.W.3d 338, 341 (Tex. Crim. App. 2012) (two discrete acts having separate intents, even if both intents were to kill the same victim, can result in two murders, if each act causes the death of a separate individual).

[21] It is, of course, possible that appellant's plea of guilty in these cases was involuntary, if appellant mistakenly believed that the oral term of the plea agreement was broad enough to bar the murder prosecution and if he would not have pled guilty had he understood that the plea agreement did not dispose of his murder case. But that is a question to be raised in a proceeding attacking the prior convictions, not in the appeal of the present case.