**Affirmed and Majority and Dissenting Opinions filed December 14, 2023.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00496-CR

### THE STATE OF TEXAS, Appellant

### V.

### SANITHA LASHAY HATTER, Appellee

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1667833**

## D I S S E N T I N G   O P I N I O N

In a motion for specific performance, appellee Sanitha Lashay Hatter asked the trial court to enforce a prosecutor's promise to dismiss a felony case and not re-file it. Appellee argued that the prosecutor's unilateral promise was an enforceable contract. The trial court granted the motion. On appeal, a majority of this panel upheld the ruling but for a different reason, namely that the prosecutor's promise constituted an immunity agreement.[1] I dissented. I and, on further appeal, the Court

---

[1] *State v. Hatter*, 634 S.W.3d 456 (Tex. App.—Houston [14th Dist.] 2021), *rev'd*, 665 S.W.3d 584 (Tex. Crim. App. 2023).

of Criminal Appeals, concluded that the prosecutor's promise was not an immunity agreement. The case returns to us with a directive to determine whether the trial court's order is correct under any other applicable legal theory, including whether there was an enforceable plea bargain agreement, and, if so, its terms, whether it was breached, and whether appellee is entitled to specific performance.[2]

A first-tier appellate court should reject an appellant's claim of reversible error on direct appeal so long as the trial court ruled correctly based on any theory of law applicable to the case, even if the court did not purport to rely on that theory.[3] This principle typically does not require the prevailing party to have explicitly raised the alternate theory in the trial court, but we will not rely on this rule to affirm unless the record is sufficiently well-developed to support a correct ruling under the alternate theory.[4]

My colleagues in the majority conclude that the trial court's order is sustainable on the theory that appellee and the State formed a binding plea bargain agreement, an argument not raised in appellee's motion.[5] I again disagree. Citing

---

[2] *See Hatter*, 665 S.W.3d at 595.

[3] *See, e.g.*, *id.* at 586 (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)); *State v. Esparza*, 413 S.W.3d 81, 85 (Tex. Crim. App. 2013).

[4] *See Hatter*, 665 S.W.3d at 594 (no record support for immunity agreement alternate theory); *Esparza*, 413 S.W.3d at 85 & n.17; *see also Martin v. State*, 620 S.W.3d 749, 759 (Tex. Crim. App. 2021) (alternate theory must be reasonably supported in record); *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019); *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

[5] Neither the panel majority nor the Court of Criminal Appeals has addressed the only argument appellee raised in her motion for specific performance: the prosecutor's unilateral promise was enforceable. For the reasons I stated previously, I believe appellee's unilateral promise theory has no merit and that the trial court could not have, under these circumstances, granted the motion based on this theory. *Hatter*, 634 S.W.3d at 466-70. While I sympathize and agree with appellee's point that prosecutors should be held to their words, the prosecutor's statement that he had no intention to re-file the felony case simply is not an assurance on which appellee could rely for purposes of enforcing the statement, given the circumstances.

2

the motion for specific performance, the majority asserts that "the parties reached an agreement pursuant to which [appellee's] felony assault charge would be dismissed in exchange for her guilty plea to the DWI charges." According to the majority, "Appellee included an affidavit from her defense counsel reiterating this agreement between Appellee and the State." The terms of the agreement, the majority asserts, were "clearly delineated: in exchange for the dismissal of the felony charge, Appellee agreed to plead guilty to the two misdemeanor DWIs." The majority concludes that the record supports "finding" that "the trial court (1) approved the parties' plea agreement as it was described by Appellee's defense counsel and O'Donnell, and (2) ordered specific performance of that agreement." Because, in the majority's view, the evidence showed that the State breached the agreement, the majority holds the trial court did not abuse its discretion in granting the motion for specific performance.

We cannot affirm the trial court's order on the theory of a plea bargain agreement unless that theory has sufficient record support.[6] Unfortunately, the majority grossly overstates the record.

A plea bargain agreement is a contract between the State and the defendant.[7] We consider the record in light of general contract law principles in determining whether a contract was formed.[8] In Texas, plea bargain agreements are generally

---

[6] *Martin*, 620 S.W.3d at 759; *Ruiz*, 581 S.W.3d at 785; *Esparza*, 413 S.W.3d at 85 & n.17; *Carrasco*, 154 S.W.3d at 129.

[7] *Thomas v. State*, 516 S.W.3d 498, 501-02 (Tex. Crim. App. 2017); *Moore v. State*, 295 S.W.3d 329, 331 (Tex. Crim. App. 2009); *see Ex parte Williams*, 637 S.W.2d 943, 947 (Tex. Crim. App. 1982).

[8] *See Williams v. State*, 502 S.W.3d 168, 170-71 (Tex. Crim. App. 2016); *Ex parte Moussazadeh*, 64 S.W.3d 404, 411 (Tex. Crim. App. 2001); *Jenkins v. State*, 495 S.W.3d 347, 350 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

contemplated to be bilateral contracts.[9]  A bilateral contract is one where each party makes non-illusory mutual promises.[10]

The majority errs in concluding that the record includes evidence of all required contract elements and that the State is bound by any bilateral contractual obligation.  At a minimum, the acceptance of an offer and mutual consent elements are lacking here.  In other words, there is no evidence of mutual promises or an exchange of any kind.  The majority's contrary conclusion is grounded on no trial court finding, no evidence, and no reasonable inference from the evidence.

Even a cursory review of the record supports my position.  Without question, the State extended a plea offer to appellee, and the offer's terms are clear:  the State would dismiss the felony charge of assaulting a peace officer in exchange for appellee pleading guilty to the DWI charges.  Importantly, however, there exists no evidence that appellee ever accepted the offer, promised to plead guilty to either misdemeanor charge, or in fact pleaded guilty to any charge.  In her declaration, appellee's felony defense counsel averred that the State extended the offer; but she was careful to avoid stating that appellee accepted the offer or made any promises.  In fact, counsel stressed that appellee's attorney in the misdemeanor case refused to agree to have appellee plead guilty to the DWI charges.  The reason the felony defense attorney believed appellee was being treated "unfairly" was because appellee's misdemeanor attorney was unwilling to plead guilty to the DWI charges.  Additionally, she said the prosecutor promised to dismiss the felony case "regardless

---

[9] *See Ramirez v. State*, 89 S.W.3d 222, 226 (Tex. App.—Corpus Christi 2002, no pet.) (plea bargain agreement is a bilateral, not unilateral, contract); *Ortiz v. State*, 885 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1994), *aff'd*, 933 S.W.2d 102 (Tex. Crim. App. 1996) ("A plea bargain consists of three parts:  a plea of guilty, the consideration for it, and the approval by the court of the agreement.").

[10] *See City of Houston v. Williams*, 353 S.W.3d 128, 135 (Tex. 2011); Restatement of Contracts § 12 (1932).

4

of the misdemeanor dispositions"—which indicates that appellee had not promised to plead guilty to the DWI charges and it did not matter whether she ever did. While counsel's declaration mentions an "agreement," counsel was clearly referring to the prosecutor's promises—and only the prosecutor's promises—as the "agreement." Accordingly, what the majority opinion erroneously characterizes as the parties' plea *agreement* is really only the State's plea *offer*. Counsel's declaration contains no assertion or evidence that appellee ever accepted the offer, consented to the terms, or made any mutual promise.

Nor does the evidence introduced at the motion for specific performance hearing establish the existence of a plea bargain agreement under contract principles. Much the contrary. The prosecutor testified that the plea offer remained on the table "throughout the pendency of the case," meaning that the offer had not been accepted. He was "under the impression" that appellee would eventually plead guilty to the DWI charges and thereby "effectively satisfy" the offer terms that had been extended. But that never happened. Further, the State's motion to dismiss the felony case, which was introduced into evidence, did not assert that the State sought to dismiss the case in accordance with a plea bargain agreement nor did it seek approval of any agreement. Appellee's counsel did not assert or present evidence that appellee had made any agreement or promise; she contended only that the prosecutor's promise was enforceable without any obligation, exchange, or undertaking on appellee's part. At the hearing's conclusion, the trial court judge did not find that a plea agreement existed; in fact, he said that he was granting the motion because it "is the honoring of the promise," which the court was "not sure is a contract. I'm not sure that contract law is something we hear in here." How is it the majority can reasonably construe these statements as an implicit finding that a

5

contract was formed? Even if the court had implicitly found the parties reached a plea agreement, the record evidence plainly does not support such a finding.

Also of note are appellee's irreconcilably inconsistent positions on this topic. Appellee did not assert that a plea bargain agreement existed until she filed a supplemental brief in our court after remand from the Court of Criminal Appeals. Her new position is flatly contrary to her prior positions in the trial court and in this court. For example, in her motion for specific performance, she did not assert that a promise by appellee to plead guilty to the DWI charges was a part of any agreement. Rather, according to appellee, she was told that the State would dismiss and not re-file the felony case even if she did not plead to the DWI charges. In her motion and accompanying brief, appellee repeatedly requested the trial court to enforce the prosecutor's "promise." According to appellee, the prosecutor's statements *alone* constituted the "contract." Significantly, far from relying on any purported plea bargain agreement, she urged directly that this case did *not* involve "*a promise of a plea bargain*." (Emphasis added). Later, in appellee's first brief filed in our court, she again characterized her motion for specific performance as seeking to enforce the State's "promise of dismissal." Not once did she suggest that she and the prosecutor had in fact formed an enforceable plea bargain agreement.

The majority claims that appellee accepted the prosecutor's plea offer and cites the prosecutor's testimony that he was under the impression that appellee would eventually plead guilty to the DWI charges. Notably, the majority does not explain with record references how appellee supposedly accepted the plea offer—by promise or performance. The prosecutor cannot accept for her, and his subjective expectation—hope, even—that she would eventually accept by pleading guilty cannot support the existence of a completed bilateral contract consisting of mutual non-illusory promises. It is undisputed that the record contains no evidence that

6

appellee ever promised or agreed to plead to the DWI charges. The record is firmly to the contrary because her misdemeanor counsel was unwilling to plead guilty to them.

Like any contract, a plea bargain agreement between the State and a criminal defendant requires more than an offer by one party; it requires mutual acceptance of, and consent to, the essential terms. Those elements are absent here. If appellee desired to rely on a plea bargain agreement to support her request for specific performance, she had the burden to prove it by showing the existence and breach of an enforceable plea agreement. She failed to support her motion with evidence of an agreement and in fact argued against the existence of a plea bargain. Having failed to satisfy her burden, the trial court could not have properly granted her motion on this alternative legal theory.[11]

The trial court's order is unsupportable on a plea bargain agreement theory for other reasons as well. Plea bargain agreements are unlike ordinary contracts in at least one important way. Even if the State and a defendant agree on material terms, no binding obligations exist on either party unless and until the court approves the proposed agreement.[12] And the approval or rejection must take place in open court.[13] "The 'contract' does not become operative until the court announces it will

---

[11] *See Esparza*, 413 S.W.3d at 88.

[12] *See Absolon v. State*, 460 S.W.3d 158, 162 (Tex. Crim. App. 2015); *Moore*, 295 S.W.3d at 331; *Bitterman v. State*, 180 S.W.3d 139, 142 (Tex. Crim. App. 2005); *Ortiz v. State*, 933 S.W.2d 102, 104 (Tex. Crim. App. 1996).

[13] *See Moore*, 295 S.W.3d at 332 (citing Tex. Code Crim. Proc. art. 26.13(a)(2) ("[T]he court shall inquire as to the existence of any plea bargaining agreements between the state and the defendant and, in the event that such an agreement exists, the court shall inform the defendant whether it will follow or reject such agreement in open court and before any finding on the plea.")).

7

be bound by the plea bargain agreement."[14]  The Court of Criminal Appeals has therefore stated that the trial court is a "necessary" party to the contract.[15]

The majority's willingness to recognize some kind of implied approval of a plea agreement—like its antecedent holding that an agreement exists—finds support in neither evidence nor law.  There is absolutely no indication in this record that any purported plea bargain agreement was proffered to the trial court, much less approved.  No testimony at the hearing indicated that the trial court was told that appellee had agreed or promised to plead guilty to the DWI charges (or that she had already done so).  Accordingly, the court did not announce, and could not have announced, that it approved any such agreement and would dismiss the felony charges at the State's request in accordance with any plea agreement.  The court's statements rather demonstrate that the court's ruling was intended to enforce the prosecutor's promise alone; the court said nothing about whether appellee had promised to plead guilty to other charges in exchange for the felony dismissal.  Nor could we reasonably infer court approval of a plea bargain agreement given the state of the record and the trial court's statements quoted above, even if the code did not require court approval of a plea bargain agreement to be announced in open court.[16] Appellee has no contractual right to demand specific enforcement of a purported agreement that has never been "entered into" or become operative.[17]

I will revisit one additional point given the majority's re-framing of the issue on remand as whether "a promise of dismissal constitutes an enforceable plea bargain agreement."  To the extent my colleagues intend to suggest that a binding

---

[14] *Ex parte Williams*, 637 S.W.2d at 947.

[15] *Ortiz*, 933 S.W.2d at 104.

[16] *See* Tex. Code Crim. Proc. art. 26.13(a)(2).

[17] *See Ex parte Williams*, 637 S.W.2d at 943.

8

plea bargain agreement exists under unilateral contract principles, they are incorrect. As I mentioned, Texas courts have characterized plea bargain agreements as bilateral in nature. Presuming that a binding plea bargain agreement also may be created under unilateral contract law in Texas, no enforceable obligation was created here.

Texas continues to recognize unilateral contract principles as part of state common law.[18] A unilateral contract is created "when a promisor promises a benefit if a promisee performs."[19] As the supreme court has explained, "[t]he requirement of mutuality is not met by an exchange of promises; rather, the valuable consideration contemplated in 'exchange for the promise is something other than a promise,' i.e., performance."[20] There is only one promisor, and the promisee accepts and gives consideration by performance.[21] A promisor's promise in a unilateral contract setting does not become enforceable until the promisee performs.[22] When the promisee delivers the bargained-for performance, the promisor then becomes bound to provide the promised benefit.[23] Unless the promisee performs the act or acts requested by the promisor, there is no binding unilateral contract.[24]

The record shows irrefutably that appellee never pleaded guilty to either DWI charge. Thus, there is no evidence that appellee ever performed. There being no performance—hence no acceptance and no consideration—no unilateral contract was created. In dicta—and tacitly acknowledging that appellee did not perform—

---

[18] *City of Houston*, 353 S.W.3d at 136.

[19] *Id*. at 135-36; *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 303 (Tex. 2009).

[20] *City of Houston*, 353 S.W.3d at 136 (citing Restatement of Contracts § 12 cmt. a (1932)).

[21] *See id*.; 1 Richard A. Lord, Williston on Contracts §§ 1.17, 1:18 (4th ed. 2007) (hereinafter, "Williston").

[22] *City of Houston*, 353 S.W.3d at 136; *Vanegas*, 302 S.W.3d at 303; Williston, § 1:18.

[23] *Dodson v. Stevens Transp.*, 776 S.W.2d 800, 805 (Tex. App.—Dallas 1989, no writ).

[24] *Sunshine v. Manos*, 496 S.W.2d 195, 198 (Tex. App.—Tyler 1973, writ ref'd n.r.e.).

9

the majority contends that the State prevented appellee from "fulfilling her contractual obligation" because it dismissed the DWI cases, which made performance "impossible." Though stating that performance was impossible, the majority inconsistently asserts that dismissal of the DWI charges "fulfilled" a "condition" of the agreement. The majority's point is unclear, given that on the one hand the majority has concluded, based on O'Donnell's testimony, that appellee "accepted;" but now on the other, the majority has deemed acceptance "impossible."

In any event, I agree that acceptance became impossible once the State dismissed the DWI charges. Contrary to the majority's view, however, that event did not *complete* a contractual bargain; rather, it *terminated* the outstanding plea offer. Termination of an offer for a unilateral contract occurs when the thing required for performance is destroyed before acceptance.[25] In the unilateral contract setting, moreover, it is irrelevant that the State dismissed the DWI charges because only the State may offer a plea bargain, and it is free to withdraw or terminate the offer any time before the promisee performs and before court approval.[26] Once the DWI charges were dismissed, the outstanding plea offer necessarily was terminated and off the table.[27] The majority errs in relying on inapplicable cases involving

---

[25] *See* Restatement of Contracts §§ 35 (offer may be terminated by destruction of thing essential for performance), 49 ("Where a proposed contract requires for its performance the existence of a specific person or thing, and before acceptance the person dies or the thing is destroyed, the offer is terminated unless the offeror assumes the risk of such mischance.").

[26] *See Absolon*, 460 S.W.3d at 162; *Moore*, 295 S.W.3d at 331-32; *Sunshine v*, 496 S.W.2d at 198; *see also Vanegas*, 302 S.W.3d at 303 (offer for unilateral contract may be withdrawn any time before performance).

[27] *See Angel v. Tauch*, 642 S.W.3d 481, 489 (Tex. 2022) (recognizing indirect termination of an offer when offeree receives reliable information that offeror has taken definite action inconsistent with an intention to enter into the proposed contract); Restatement of Contracts § 35 (revocation by offeror will terminate offer). The record demonstrates that appellee knew the DWI cases had been dismissed; therefore, at a minimum, an implied termination of the offer is effective. *See Tauch*, 642 S.W.3d at 489.

whether a party to an executed contract performs a condition stated in the contract to the other party's satisfaction.

Some courts outside Texas have applied unilateral contract principles to determine whether an enforceable plea bargain agreement was created.[28] *Diaz-Colon* provides one illustrative and compelling example similar to the present facts and supportive of my position.[29] There, the government submitted a proposed plea agreement to the court, which stated that the parties had reached an agreement with regard to the defendant's guilty plea. But the proposed plea agreement was signed only by the government's attorneys. The plea agreement did not contain bilateral promises or an explicit promise by the defendant Diaz to do anything—thus, the court construed it as an offer by the government for a unilateral contract. Before court approval, the government sought to withdraw its offer based on new evidence. The defendant objected to the government's withdrawal and requested specific performance of the plea agreement. The court held that no enforceable unilateral contract had been created because the defendant had not performed. "[U]ntil the defendant actually performs by entering his change of plea and the Court accepts such plea, either party, including the government, is free to withdraw from the plea agreement."[30] The court rejected a contention almost identical to appellee's theory asserted in her motion for specific performance in the trial court: "the mere fact that

---

[28] *E.g.*, *United States v. Papaleo*, 853 F.2d 16, 19 (1st Cir. 1988); *Gov't of the V.I. v. Scotland*, 614 F.2d 360, 364 (3d Cir. 1980); *United States v. Diaz-Colon*, 794 F. Supp. 2d 353 (D. Puerto Rico 2011); *State v. Collins*, 265 S.E.2d 172, 176 (N.C. 1980); *see also Shields v. State*, 374 A.2d 816, 820 (Del. 1977) ("We hold that the State may withdraw from a plea bargain agreement at any time prior to, but not after, the actual entry of the guilty plea by the defendant or other action by him constituting detrimental reliance."); *accord State v. Dillon*, 398 N.W.2d 718, 720 (Neb. 1987) (same).

[29] *Diaz-Colon*, 794 F. Supp. 2d at 354.

[30] *Id*. at 354.

the parties were in negotiations of a plea agreement, without actual performance by defendant, does not create a 'constitutional right to have that bargain enforced.'"[31]

The trial court's ruling is not supportable on the theory that an enforceable plea bargain agreement existed and was approved by the court. This court should reverse the trial court's order and remand the case. Because the majority fails to do so, I respectfully dissent.

/s/     Kevin Jewell
          Justice

Panel consists of Justices Jewell, Bourliot, and Hassan (Hassan, J., majority).

Publish — Tex. R. App. P. 47.2(b).

---

[31] *Id.* (citing *Papaleo*, 853 F.2d at 19).